# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BONNIE JAMES

      Plaintiff,

vs.                                      CIV  NO. 00-0337 M/KBM

CONTINENTAL CASUALTY COMPANY, and the
STD DYNCHOICE SR83087048 or SR83087017 PLAN,
and the LTD DYNCHOICE SR82087049 or SR83087016 PLAN,
and DYNCORP, Plan Administrator for STD DYNCHOICE
SR83087048 or SR83087017 and LTD DYNCHOICE
SR83087049 or SR83087016,

      Defendants.


## MEMORANDUM OPINION AND ORDER


**THIS MATTER** comes before me on the Plaintiff's Bonnie James Motion for Summary Judgment for Reversal of Continental Casualty Corporation's Decision Denying her Short Term Disability Benefits, Defendants' Cross Motion for Partial Summary Judgment on the same issue of Short Term Disability Benefits, the Cross Motions filed by both Plaintiff and Defendants Requesting Partial Summary Judgment on the Plaintiff's Claim for Long Term Disability, and Defendants' Motion for Summary Judgment on the Plaintiff's Claim of Retaliation.  Having reviewed the moving papers, responses, replies, cross motions, responses and replies as well as

1

the Administrative Record and the Exhibits attached to the Motions, I find that the Defendants'

Motions for Summary Judgment are well taken and will be granted. The Plaintiff's Motions for

Summary Judgment are not well taken and will be denied. The granting of these motions resolves

all the legal issues in favor of the Defendant. There being no other factual or legal issues to be

resolved in this case, I hereby grant judgment in favor of the Defendants and dismiss the case in its

entirety by accompanying order.


## FACTUAL BACKGROUND

Bonnie James, an employee of DynCorp during the relevant times in 1996, made

applications for three short term disability claims. As an employee of DynCorp she was covered

under employer-provided short term and long term disability insurance plans. The insurance plans

were issued by Continental Casualty Company (CNA). Claims under both the short term and long

term disability insurance plans were determined, administered and reviewed by CNA as the Claims

Administrator.

The Short Term Disability policy stated that in order for an employee to become eligible

for benefits the employee must meet the following definition of total disability:

> Total disability means that the Insured Employee, because of injury or
> sickness, is:
> 1) Continuously unable to perform the substantial and material
> duties of the Insured Employee's regular occupation;
> 2) Under the care of a licensed physician other than the Insured
> Employee; and
> 3) Not gainfully employed in any occupation for which the Insured
> Employee is or becomes qualified by education, training or
> experience. (Administrative Record 296, hereinafter AR)

The first claim for short term disability which was predicated upon depression and two

hospitalizations was partially granted, was not appealed and is not at issue here. The second claim, made after she had returned to work from her first short term disability leave, was filed on November 21, 1996 for short term disability. The basis of the claim was major depression with disabling panic attacks and agoraphobia. The Plaintiff was hospitalized at Mesilla Valley Hospital for this condition from November 17, 1996 to November 21, 1996. In the course of investigating this claim for short term disability, CNA became aware that the Plaintiff Bonnie James owned a computer business known as BJ Computers.

CNA investigated the second short term disability claim by contacting the Plaintiff's supervisor at DynCorp, calling the treating physician Dr. Flores who confirmed the diagnosis and hospitalization, conducting surveillance on the Plaintiff's home to see if she was running a business out of her home, and conducting surveillance to see if Plaintiff was working at BJ Computers at a retail location in Alamogordo, New Mexico. CNA did not obtain written medical records from Dr. Flores or the hospital at which Plaintiff was hospitalized. CNA made internal notes to itself in its file to mail a consent to release medical information to the Plaintiff. (AR 108) However CNA never received a consent from Plaintiff, never followed up on the failure to receive a consent to release medical information and subsequently never obtained medical records from this period during its initial investigation.

Suspicious that the Plaintiff was actually working at her own business, BJ Computers, while out on leave from DynCorp, CNA began a surveillance of the Plaintiff's home and the retail location of BJ Computers in Alamogordo. CNA hired a private investigative services company to determine if the Plaintiff was running a computer company out of her home. The private investigators worked on January 16 and 17, 1997 and concluded that "it is highly probable that

[Plaintiff] is running some type of computer business out of her home". (AR 195-200) CNA had

its own investigator visit the retail location of BJ Computers in Alamogordo in January 1997.

The investigator met a female subject at the business location who matched the general

description of the Plaintiff. "[H]owever, it has yet to be established that she takes an active role in

running the business." (AR 191-193)

CNA also contacted the human resources manager at DynCorp and Plaintiff's supervisor

Chris Garcia. The human resources manager described Plaintiff's job as one where she "operates

and maintains electronic equipment." The human resources manager knew that Plaintiff had a

business of her own in computer repair. Chris Garcia stated that Ms. James was working at home

with BJ Computers which did maintenance contracts. (AR 217-218)

Based upon this information, CNA made a determination that the Plaintiff did not qualify

for short term disability benefits for the claim made in November 1996. The initial determination

was made on January 27, 1997 and relied on three grounds - that Plaintiff was apparently working

at BJ Computers while on leave from her employment at DynCorp, that she was "not

continuously unable to perform your job duties" and that CNA was unable to obtain medical

evidence of the Plaintiff's continuing disability. (AR 105)

A CNA Disability Specialist, Deidra Chitty, called the Plaintiff on her home phone on

January 28, 1997 to inform Bonnie James of this decision. The Plaintiff answered her home

phone "BJ Computers" at which time she was informed verbally that she had been denied short

term disability benefits. (AR 105) Two days later CNA wrote a letter explaining their decision of

denial and informing Ms. James of her right to an appeal. (AR 178-9)

The Plaintiff filed a third short term disability claim on or about January 31, 1997 for a

broken ankle. (AR 88) Ms. James slipped at home on January 23, 1997, breaking her ankle. She had ankle surgery on January 27, 1997 and was recovering at home from the surgery when CNA called on January 28, 1997 to inform her verbally that she was being denied her short term disability claim from November.

The broken ankle disability claim was Plaintiff's third short term disability claim. CNA examined this claim, determined that the Plaintiff was uninsured under the CNA short term disability plan on the relevant days in January 1997 because she was on an unapproved leave of absence from DynCorp during the time from November 14 to January 27, 1997. Therefore CNA denied the claim. CNA determined that she was on a unapproved leave of absence from her employer because the circumstances under which she had taken leave from November to January did not qualify as a short term disability. Therefore CNA's decision to deny short term disability benefits for Ms. James' leave from DynCorp in November 1996 led to the denial of short term disability benefits for the third claim for the broken ankle and resulting surgery.

The Plaintiff appealed the denial of her second and third short term disability claims on March 6, 1997 by sending a letter outlining the relevant facts of her two disability claims. (AR 159) The appeal was referred to the CNA Appeals Committee. (AR 154) Plaintiff also attempted to obtain copies of the medical records and other information that CNA had in its possession. She wrote CNA requesting a copy of their file. (AR 157) CNA wrote back that they could only give her a copy of her application for Short Term Disability Benefits. The rest of the file was CNA property and they were unable to give her any other information contained in her file. (AR 158)

By letter decision dated June 2, 1997, CNA denied both short term disability claims - the

one in November for depression and agoraphobia and the one in January for the broken ankle. (AR 151-2) The letter reviewed the first and second disability claims predicated on depression and pointed out that the "objective medical documentation in your file did not support you were unable to perform the material and substantial duties of you own occupation.  Your third claim was denied because you were not eligible for coverage when this injury occurred."  (AR 151-2)

The objective medical documentation that CNA relied upon was minimal at this stage of review.  Having never received a medical release form from the Plaintiff, CNA had not received any medical reports from the hospital where Plaintiff was hospitalized in November 1996 nor any doctor reports resulting from these hospitalizations.  CNA had made a phone call to the office Dr. Flores which confirmed the diagnosis of major depression with a hospitalization from November 17 to November 21, 1996 with no follow up appointment. (AR 148).  But CNA had not obtained any other written medical information at this point.

On April 11, 1998, Ms. James wrote CNA asking to re-open her appeal of the denial of her short term disability claims.  (AR 49) By this time Plaintiff realized that CNA had very little medical evidence concerning her disability in its file.  Plaintiff obtained copies of her medical records and sent them to CNA for review.  (AR 49) CNA reevaluated her claim in light of the additional evidence received but reaffirmed their initial decision to deny her short term disability benefits.  (AR 47) The denial letter first stated that Plaintiff had ceased work for non-disability reasons on November 14, 1997(sic) [should be 1996].  It also mentioned that there was strong circumstantial evidence indicating that Plaintiff was engaged in another occupation for wage or profit "which raises questions concerning your true work capacity and the severity of your condition."  In addition, the appeals committee stated that the medical records that Plaintiff

provided "are limited and the periods of time they represent are sporadic and of short duration. This does not demonstrate your condition would have been considered severe or that it would have precluded work on a continuous basis even if coverage had been in effect."  (AR 47)

## STANDARD OF REVIEW

### SUMMARY JUDGMENT

These motions have come before me as motions for summary judgment.  The standard of review for motions for summary judgment is well established.  A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  Initially, the moving party bears the burden of showing the absence of a genuine issue of material fact.  *Celotex Cop. v. Catrett*, 477 US 317, 325 (1986). Only then does the burden shift to the non moving party to come forward with evidence showing that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

In this case there are cross motions for summary judgment on the issue of affirming or reversing CNA's denial of short term disability benefits so actually both parties are moving parties.  Hence both parties are arguing that there are no genuine issues of material fact and that they are entitled to a decision in their favor as a matter of law.  The list of undisputed facts presented by the parties  references the Administrative Record which was before CNA during the appeal processes.  The parties agree with three exceptions with the list of facts gleaned from the Administrative Record.

The first disputed fact concerns whether any hospital or doctors' records were requested

by CNA. (Plaintiff's Material Facts No. 12). A careful and thorough review of the Administrative Record answers the issue. CNA gathered hospital and doctors' records relating to the first claim of short term disability. That claim, having been granted in part and denied in part, is not at issue anymore. CNA did not request written hospital or doctors' records during the initial determination, or even the first appeal, of Plaintiff's second and third claims of short term disability. However, the Plaintiff herself submitted a complete set of all written hospital and doctor records to CNA for its review when she requested a second appeal of her short term disability claims. This did not occur until April of 1998, more than a year after her request for her second claim for short term disability in November 1996 and for her third claim for short term disability in January 1997. However by the time the second appeal of her claims was held, CNA had before it the necessary medical records.

Therefore, there is no material issue of fact when clarified by which claim is being referred to and when CNA requested medical records. The material fact No. 12 should read: CNA requested and obtained hospital and doctor records relating to Plaintiff's first claim for short term disability. CNA did not obtain written hospital and doctor records relating to Plaintiff's second or third claim for short term disability. Plaintiff supplied written hospital and doctor records relating to the second and third claims for short term disabilities when she requested a second review of the denial of these claims.

The second material fact which is disputed by CNA is the Plaintiff's characterization of the Coon Investigative Services report issued January 17, 1997 as concluding that is was "possible" that Ms. James was running a business from her home. (Plaintiff's Material Facts No. 30) The Coon report, which resulted from a two day surveillance of Plaintiff's home to determine if she

was running a computer business from her home while on leave from DynCorp, is contained in its entirety in the Administrative Record. (AR 195-200). CNA is correct when it states that the report concludes that it is "highly probable" that the Plaintiff was running a business out of her home.

CNA also disputes Plaintiff's Material Fact No. 37 which states that a letter dated December 30, 1996 sent to Plaintiff at her home indicates that no medical authorization was enclosed. (AR 213) Plaintiff is correct in stating that the letter from CNA does not indicate that a medical release form was enclosed. The letter does not mention a medical release form, does not indicate that there was an enclosure and does not ask the Plaintiff to sign any form and return it. CNA had made an internal note to itself in its file to have an employee mail a medical release form to the claimant Ms. James about two weeks before the December 30th letter was mailed. Whether the medical release form was ever sent is impossible to tell from the administrative record. This is a fact which is truly in dispute - whether a medical release form was enclosed with the letter dated December 30, 1996. CNA claims it was. Plaintiff denies it was. However, I find in light of my analysis and review of the denial of the second and third short term disability claims that this issue of fact is not material. Therefore, while in dispute, this fact does not materially affect the outcome of my analysis and decision.

## REVIEW OF CNA DECISIONS REGARDING SHORT TERM DISABILITY

I previously held that the employee benefit plan at issue in this case confers discretionary authority to determine claims upon the claims administrator CNA. Therefore the proper standard of review of the decisions made by the claims administrator is whether the decisions are "arbitrary

and capricious".  In reviewing an administrator's decision, "a court may not overturn a plan administrator's decision if it was reasonable, given the terms of the plan and made in good faith." *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999).  An administrator's decision "need not be the only logical one nor even the best one."  *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999).  The administrator's decision is to be upheld unless it is not grounded upon any reasonable basis.  *Id., quoting Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1459 (10th Cir. 1991).  My review is limited to the Administrative Record which was before CNA at the time it made its decisions. *Sandoval v. Aetna Life & Casualty Insurance Company*, 967 F.2d 377 (10th Cir. 1992).

The Plaintiff contends that less deference should be given to the decisions of CNA as the claims administrator because CNA both administers and pays benefits under the policy at issue and therefore operates under a conflict of interest.  The Tenth Circuit has declined to hold that when a claims administrator is employed by the same insurance company which will ultimately pay the insurance benefits that a conflict of interest necessarily exists.  *Jones v. Kodak Medical Assistance*, supra, 1291.  The Court explained that the district court should examine each situation to determine if a conflict actually exists in the situation before it and lists several factors which could be considered.  Once the district court determines that a conflict of interest exists between the claims administrator as fiduciary to the insured and the insurance company as the provider of insurance benefits, the Tenth Circuit directed the district court to use a sliding scale in which the district court decreases the amount of deference given to the decisions in proportion to the severity of the conflict.  *Jones v. Kodak Medical Assistance Plan*, supra, 1291.

The factors enumerated in *Jones v. Kodak Medical Assistance Plan* are not particularly

relevant in this case and I will not repeat them here. But I have determined that a conflict of interest existed between CNA as the claims administrator and CNA as the provider of short term and long term disability insurance benefits. First, all the investigators, disability specialists and decision makers involved in this case, with the exception of Coon Investigate Services, were all employees of CNA. Secondly, CNA is a for profit insurance company more similar to the non profit Blue Cross and Blue Shield of Oklahoma in *Pitman v. Blue Cross and Blue Shield of Oklahoma*, 217 F.3d 1291 (10th Cir. 2000), than the self-funded plan of Thiokol Corporation in *Kimber v. Thiokol Corp.*, supra. Thirdly, CNA employees were acutely aware of the cost to their employer in granting or denying short or long term disability insurance claims as evidenced by the Short Term Disability Termination Log completed by one of CNA's Adjusters. (AR 155) That log showed Short Term Disability savings of $6233.70 as a result of the denial of Ms. James second short term disability claim. Fourthly, whether the Plaintiff was eligible for long term disability insurance was obviously of concern for CNA's employees as they called Plaintiff's human resources manager to determine if Plaintiff was indeed eligible. (AR 108)        These factors, taken together, establish that CNA had a conflict of interest when it was acting as the insurer and administrator of the disability plans. "Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business." *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F. 2d 1556, 1561 (11th Cir. 1990), cited with approval in *Pitman v. Blue Cross and Blue Shield of Oklahoma*, supra.

DISCUSSION OF SHORT TERM DISABILITY CROSS MOTIONS FOR SUMMARY

JUDGMENT

In accordance with the sliding scale approach adopted by the Tenth Circuit in *Chambers v. Family Health Plan Corp.*, 100 F.3d 818 (10th Cir. 1996), I find that I should decrease the amount of deference given to the decisions made by CNA in accordance with the severity of the conflict of interest. The conflict of interest is moderate in this case. Therefore, I am decreasing the deference given to the decisions made by the insurance company somewhat. Nevertheless, I find (1) that the initial decision by CNA to deny Ms. James' second claim of short term disability was not arbitrary and capricious for at least one of the reasons stated by CNA for its decision, (2) that the decision by CNA to deny Ms. James' third claim of short term disability was not arbitrary and capricious because she was not an insured claimant at the time of the claim, (3) that the first review and subsequent denial of these two short term disability claims was not arbitrary and capricious given the information that CNA had before it with which to make its decision, and (4) that the second review in 1998 of the previous denials was not arbitrary and capricious but supported by substantial evidence and not contrary to law. I further find that although Ms. James was not given a full and fair review of the denial of her claims in 1997 that by 1998, as a result of the second review, Ms. James received a full and fair review of her second and third disability claims and the denials of coverage.

In the initial decision by CNA in late January 1997 to deny Ms. James' second claim of short term disability for depression and agoraphobia , CNA made internal notes to itself on January 27, 1997 that claimant's disability benefits were denied because "#1 - no medical, #2 - working, #3 - not TD own occ". (AR 105) As has been previously noted, CNA had not obtained

12

any written medical records in regards to this second claim of disability. The benefits specialists had written medical records, both from hospitals and from doctors, from Ms. James' first claim for short term disability predicated on depression. Those medical records did not, in CNA's opinion, substantiate more than a short, two week disability which had been approved and paid previously. So when confronted by a second claim of short term disability, very similar to the claim made just two and a half months after Ms. James had returned to work, the CNA claims benefit specialists were not diligent in obtaining medical evidence of the disability. For whatever reason, CNA did not obtain a single piece of written evidence before makings its determination that the Plaintiff's claim was not supported by medical evidence. The benefit specialist had only made one phone call verifying Plaintiff's hospitalization in November 1996 and learned there was no follow up care scheduled with that physician. I find that the decision to deny Ms. James short term disability claim for her depression and agoraphobia from November 1996 on the basis of no medical evidence to support such claims was arbitrary and capricious, given the conflict of interest that existed between CNA as fiduciary and CNA as insurer. There was no medical evidence to support the claim because virtually no medical evidence had been obtained.

However, the insurance plan defined total disability as requiring that three elements be met. If any one of the elements of total disability were not present, the plan's definition of total disability would not be met. The plan stated:

> Total disability means that the Insured Employee, because of injury or sickness, is:
> 1) Continuously unable to perform the substantial and material duties of the Insured Employee's regular occupation;
> 2) Under the care of a licensed physician other than the Insured Employee; and
> 3) Not gainfully employed in any occupation for which the Insured Employee is or becomes qualified by education, training or experience. (AR 296)
> CNA had substantial evidence that Ms. James was employed for wage or profit with BJ

Computers while she was on leave from November 1996 to January 1997. It was common knowledge among DynCorp employees that Ms. James owned a computer company. (AR 185, 217). The Plaintiff admitted that she owned BJ Computers and had owned the company before she began working at DynCorp. (AR 159). CNA conducted a surveillance both at the home and at the business address which led their investigators to conclude that the Plaintiff was working at BJ Computers while she was on leave. (AR 195-202, AR 185-189). Plaintiff told her own doctor, which notes were in CNA's files for the second appeal in 1998, that she was running a part time business on her own as well as working at DynCorp. (AR 83). Lastly, when CNA employee Deidra Chitty called Ms. James at her home phone number to inform her that her second claim for short term disability was being denied, Ms. James answered the phone "BJ Computers". (AR 178). This evidence was collected by CNA during the investigation in December 1996 and January 1997 (except for the doctor notes of November 17, 1996 where Ms. James told her doctor she was running a part time business) to determine if the claimant was totally disabled according to the definition of the insurance policy. The evidence was substantial enough for CNA to determine that Ms. James was "gainfully employed in an occupation". Therefore, CNA concluded that Ms. James did not meet their definition of total disability. I find that CNA's decision was not arbitrary and capricious based upon this reason for denial but was supported by the evidence in the Administrative Record.

I also find that the determination by CNA that Ms. James was able to perform the substantial and material duties of her regular occupation as Electronic Technician A was not arbitrary and capricious given the information that CNA had collected and reviewed. CNA had a verbal description of Ms. James job duties at DynCorp. Ms. James claims it was not a complete

description of her employment duties. However, it was sufficient for CNA to determine that based upon its evidence of Ms. James owning and helping to run BJ Computers that she did not meet the qualification of disability which required that she was "continuously unable to perform the substantial and material duties of ...[her] regular occupation".

## THE ISSUE OF FULL AND FAIR REVIEW

Plaintiff did not bring a cause of action in her amended complaint based upon her perceived lack of full and fair review under ERISA. However since so much paper and argument has been brought to bear upon this issue, I will address the issue. ERISA requires that a plan must follow certain procedural steps when denying a claim for insurance benefits. It must provide the insured with a written notice of the denial which sets forth the specific reasons for the denial of the claim. 29 U.S.C.. § 1133 (1) The plan must provide a reasonable opportunity for a full and fair review of the decision denying the claim. 29 U.S.C. § 1133 (2). The Labor Regulations further specify that the review procedure must "(iii) [p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits". 29 C.F.R. §2560.503-1 (h)(4). The Tenth Circuit has held that "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision" are all requirements of a full and fair review. *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 893-4 (10th Cir. 1988) quoting *Grossmuller v. International Union, United Auto, Aerospace & Agric. Implement Workers, Local 813,* 715 F.2d 853, 858 n.5 (3rd . Cir.

1983), *Sandoval v. Aetna Life and Casualty Insurance Co.*, supra.

The Plaintiff wrote to CNA on March 28, 1997, shortly after making her written request for her first review and requested copies of the information that CNA had acquired during its investigation of her short term disability claim from November. (AR 157) CNA wrote back that they would only send a copy of the original claim form which Ms. James had submitted for short term disability benefits. "The remainder of our file is CNA property and we are unable to give you any other information contained in your file." (AR 158) By refusing to release or even list what information the CNA benefit specialists had relied on in making the determination that claimant was not totally disabled, Ms. James was unable to address the reliability or accuracy or even sufficiency of the information in CNA's files. This refusal to release information to the claimant for the purposes of her appeal was arbitrary and capricious and not in accord with the Labor Regulations 29 C.F.R. §2560.503-1(h)(4). Thus, I find that <u>initially</u> Ms. James was not afforded a full and fair review of her denial of her second short term disability claim for depression and agoraphobia .

The C.F.R. regulations also require that the full and fair review process "[p]rovide for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." C.F.R. §2560.503-1 (h)(2)(iv) and (h)(4). The Plaintiff learned by April 1998 that CNA had virtually no medical information in its file concerning her second short term disability claim. She gathered the written medical records herself and sent them to CNA along with a request for a second review. (AR 49) Those medical records are now in the Administrative Record, (AR 52-100) and are mentioned in CNA's letter

dated July 8, 1998 (AR 47).

The July 1998 letter again denies Ms. James second claim for short term disability but this time on three slightly different grounds. First, the appeals committee states that all coverage ended on November 14, 1996 but that of course begs the questions since that was the date of the beginning of the alleged second short term disability. Secondly, the appeals committee writes that "[t]here is also strong circumstantial evidence indicating you were engaged in another occupation for wage or profit which raises questions concerning your true work capacity and the severity of your condition." (AR 47). Lastly, the appeals committee reviewed the submitted written medical records and wrote, "[t]he records you provided are limited and the periods of time they represent are sporadic and of short duration. This does not demonstrate you condition would have been considered severe or that it would have precluded work on a continuous basis even if coverage had been in effect." (AR 47)

Plaintiff was finally afforded her full and fair review, with a complete review of all her medical records which related to the second and third short term disability claims. The conclusion of the CNA appeals committee was that the medical evidence did not support a finding of total disability. Reviewing this decision under the arbitrary or capricious standard, even giving less deference to the decision due to the conflict of interest between CNA as fiduciary and CNA as provider of benefits, I find that this decision is supported by substantial evidence and is therefore not arbitrary or capricious. Since the Plaintiff was subsequently afforded a full and fair review of the disability benefits denial in July 1998 by CNA, I find that the lack of an initial full and fair review is now moot. I also find that the denial of the third claim for short term disability on the grounds that all disability insurance coverage had ended for the claimant is supported by the

17

evidence and is therefore not arbitrary or capricious. (AR 133)

In conclusion, I find that the denial of the Plaintiff's second and third short term disability claims by CNA were not arbitrary and capricious because the denials were supported, in part, by substantial evidence, not contrary to law and in accordance with the terms of the plan. While Plaintiff was not afforded a full and fair review at first by CNA, she eventually received her full and fair review of the denials from the CNA Appeals Committee at which time all her medical evidence was reviewed. The final review, which upheld the previous denials of benefits, was neither arbitrary or capricious and was supported by substantial evidence before the Appeals Committee. Finding no material issues of fact in dispute regarding these claims, I hereby grant the Defendants' cross motion for summary judgment for the short term disability claims. Plaintiff's summary judgment motion for reversal of the denial of the short term disability claims is denied.


## LONG TERM DISABILITY BENEFIT MOTIONS

### STANDARD OF REVIEW OF SUMMARY JUDGMENT MOTIONS FOR LONG TERM DISABILITY BENEFITS

Both Defendants and Plaintiff have filed partial motions for summary judgment on the issue of whether Ms. James is entitled to long term disability benefits under the CNA long term disability insurance contract. The parties submitted numbered lists of undisputed material issues of fact in their respective motions. There were some disagreements between the parties about the "issues of fact" but their disagreements were in fact about mixed statements of fact and law or about statements which where actually legal conclusions.

A motion for summary judgment may be granted only when "there is no genuine issue as

to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)   The material issues of fact which both parties agree upon and which are established in the Administrative Record in regards to the issue of Plaintiff's long term disability claim are as follows:

1.  All full time active DynCorp employees were covered under a long term disability policy issued by CNA, SR 83087016.  The effective date of the policy was January 1, 1994 through the relevant dates of this action. (AR 263-285).

2. DynCorp established a Summary Plan Description of its employee welfare benefit plan which provided that all claims forms may be obtained from the Employer.  (AR 43).

3.  The long term disability policy required that notice of a claim under the policy be given to CNA within thirty days of the loss or as soon as possible thereafter. (AR 276).

4.  Plaintiff did not file any long term disability claims or give notice of a long term disability claim. (AR as a whole).

5.  The long term disability policy issued by CNA for DynCorp employees provided that the Insured Employee's coverage under the policy will terminate on the date that the Inured Employee is "a) no longer a member of a class eligible for insurance" or "d) ceases work because of a non-approved leave of absence .... unless [CNA] and the Employer have agreed in writing to continue insurance during such period."  (AR 275).

6.  Plaintiff was on leave from her job at DynCorp from May 16 through September 1, 1996 and again from November 11, 1996 to the present.  (AR 163).

7.  DynCorp terminated Plaintiff on February 24, 1997 because she was on an unapproved leave of absence. (AR 162).

8. Plaintiff made a short term disability claim in June 1996 relating back to her May 16 illness. The claim was granted in part and short term disability benefits were paid for the period from May 19 to June 1, 1996. (AR 121).

7. Short term disability benefits were not paid from June 1 to September 1, 1996 on the basis that the medical evidence did not support a finding of continuing, total disability. (AR 232)

9. Plaintiff returned to work September 1, 1996. She continued to work until November 14, 1996 when she again became ill and went on leave. She made a claim for short term disability benefits in November 1996. (AR 78).

10. Plaintiff was denied short term disability benefits for the claim originating in November 1996 because 1) there was strong circumstantial evidence that she was gainfully employed for wage or profit at another occupation, and 2) the medical evidence did not support a finding of total disability, i.e. a continuous inability to work. (AR 47).

11. Plaintiff was on an unapproved leave of absence in January 1997 as a result of the denial of her short term disability claim by CNA and therefore was not a member of the insured class of DynCorp employees in January 1997. (AR 163).

12. Plaintiff's third short term disability claim dated in January 1997 (the broken ankle claim) was denied because she was no longer insured by CNA for short term disability benefits under the policy covering full time active DynCorp employees. (AR 170).

13. The long term disability policy did not come into effect until the Insured Employee had met the definition of total disability under the CNA short term disability policy and had continued to do so for six months. (AR 272).

## DISCUSSION OF THE LONG TERM DISABILITY CLAIM

The parties have argued extensively in their cross motions for summary judgment on the issues of the necessity of Plaintiff filing a claim for long term disability, the exhaustion of administrative remedies and the futility of such administrative remedies. None of this is relevant in light of my decision to grant summary judgment in favor of the Defendants on the denial of short term disability benefits for Ms. James. CNA determined that Ms. James did not meet the definition of total disability in regards to her claim made in November1996, according to its insurance policy terms. I have reviewed that decision to determine if it was arbitrary or capricious giving less deference to the insurance company's decision in light of its inherent conflict of interest. I have determined that the decision was not arbitrary or capricious but was supported by substantial evidence. The determination that Ms. James was not totally disabled was a reasonable interpretation under the CNA short term disability insurance policy and its terms.

Since Ms. James did not meet the elimination period required by the long term disability policy, that is she was eligible for short term disability benefits for the required six months, she did not meet the minimum requirements for benefits under the long term disability policy. Therefore, the fact that she failed to make a claim under the long term disability policy is of no consequence. She was not totally disabled under the short term disability policy and by definition could not be eligible for long term disability benefits under the CNA policy issued to DynCorp employees.

The Defendants' Motion for Partial Summary Judgment is granted on the issue of long term disability benefits. The Plaintiff's Cross Motion for Partial Summary Judgment on the issue of long term disability benefits is denied. As the Plaintiff admits in her Cross Motion, judgment

on the Cross Motion is contingent on the granting of her Motion for Summary Judgment on the short term disability claim of November 1996. Since that Motion by Plaintiff was denied, her Cross Motion for Partial Summary Judgment on the issue of long term disability benefits is also denied.

## ISSUE OF RETALIATORY DISCHARGE

Plaintiff amended her Complaint to add a cause of action for retaliatory discharge in violation of ERISA. (Doc. No. 23) Under section 510 of the ERISA Act, 29 U.S.C. §1140, an employer may not "discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." Plaintiff alleges that she was terminated from her job as Electronic Technician A at DynCorp either for having exercised her rights under the employee benefit plan or to prevent her from obtaining benefits under the plan. After the close of discovery, Defendants moved for summary judgment on the issue of retaliatory discharge arguing that the material undisputed facts do not allow the Plaintiff to establish a prima facie case under Section 510 of ERISA. In the alternative, Defendants argue that even if a prima facie case is established that Plaintiff's employer DynCorp had a legitimate business reason to terminate the Plaintiff.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment may only be granted when there are no undisputed material issues of fact and when the moving party is entitled to judgment as a matter of law. When the intent of a

party is at issue, as it is here, the plaintiff cannot defeat the summary judgment motion by merely relying on the argument that a jury may disbelieve a defendant's testimony and therefore find the requisite intent. The plaintiff needs to present some significant probative evidence tending to support her cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

To avoid a summary judgment in the Defendants' favor, the Plaintiff must make a sufficient showing on each element of the cause of action for which the Plaintiff has the burden of proof. The evidence presented must be sufficient to allow a reasonable jury to return a verdict in her favor. *Anderson,* supra. Plaintiff has failed to carry her burden on this cause of action. Summary judgment is granted in favor of the Defendants on the issue of retaliatory discharge.

Again the parties have presented numbered lists of undisputed material facts in support or in defeat of this summary judgment motion. Plaintiff contests many of the Defendants' undisputed material facts arguing that they are misleading, technically not accurate or conclusory. Plaintiff submits eighty-five additional undisputed material facts, very few of which are relevant to the claim of retaliatory discharge. Defendants admits Plaintiff's additional facts but claims they are irrelevant to the motion for summary judgment.

After careful analysis of the lists of material facts, with many cross references to the Administrative Record, I have concluded that the disputes between the parties regarding the numbered lists of facts do not, in any particular, rise to the level of a dispute about a <u>material</u> issue of fact concerning the subject matter of the cause of action for retaliatory discharge. Therefore, for purposes of this motion for summary judgment, I find that there are no relevant disputed material issues of fact. I have also reviewed the Plaintiff's Affidavit and the excerpts from Mr. Molander's deposition which were submitted as attachments to the Motion for Summary

Judgment and the Response thereto. Fed. R. Civ. P. 56 (e).


### FACTUAL BACKGROUND ON THE ISSUE OF RETALIATORY DISCHARGE

Plaintiff Ms. James worked for DynCorp beginning in 1986 as an Electronic Technician C. Between 1986 and 1996, Plaintiff left DynCorp twice to work for another company, came back to DynCorp twice and was laid off several times because of a reduction in work force  At one point in 1993, having been promoted to Electronic Technician B, Ms. James applied for a posted job opening for Electronic Technician A.  Mr. Molander, the Human Resources Manager for DynCorp, asked Ms. James to withdraw her application.  (Affidavit of Ms. James)  Ms. James refused to withdraw her application.  Instead, Ms. James filed a grievance under the Collective Bargaining Agreement through her Union.  As a result of the grievance, Ms. James was hired back by DynCorp in February 1996 as an Electronic Technician A.

Because of the grievance she had filed, Ms. James felt that Mr. Molander developed an animosity towards her beginning in 1993.  When she was rehired in 1996, Mr. Molander told her "you won't be here long", and acted with indifference to her creating a bad work environment. (Affidavit of Ms. James)

Ms. James filed her first short term disability claim in June 1996, her second short term disability claim in November 1996, and her third short term disability claim in January 1997.  Her first short term disability claim was granted in part and denied in part.  She was away from work from the middle of May 1996 to September 1, 1996.  Upon returning to work Ms. James became increasingly ill.  She was having panic attacks, increased headaches, increased agoraphobia and depression.  She was hospitalized for these symptoms from November 17 to November 21, 1996

and filed her claim for disability benefits shortly thereafter.

Her second short term disability claim was denied by letter from CNA dated January 30, 1997. Her third short term disability claim, for the broken ankle suffered January 23, 1997, was denied by a letter from CNA dated February 6, 1997.

A copy of both letters was sent to Frances Hinkle, the secretary in the Human Resources Department, who worked for Mr. Molander. Mr. Molander sent the Plaintiff a letter dated February 6, 1997 in which he wrote,

> In reviewing your file, we find that you have been absent for the period from May 1, 1996 through September 1, 1996 and from November 11, 1996 to the present. DynCorp was led to believe that you were on short term disability , but recent discussions with DynCorp's insurance carrier reveal that, in fact, you were not. You also did not communicate this to us. The fact is that during these periods you were on unapproved leave of absence.

The letter further stated that DynCorp assumed that Ms. James had voluntarily resigned and asked her to call Mr. Molander if she did not agree with that assumption.

Ms. James did not call Mr. Molander after receiving this letter but did send a short letter explaining that she was in dispute with the insurance company about the denial of her short term disability benefits. Mr. Molander tried several times to call Ms. James after the letter dated February 6, 1997 was written. Sometimes he got an answering machine and sometimes the phone just rang. Mr. Molander's secretary Ms. Hinkle also tried to call several times, as did another DynCorp employee Louie Jaramillo. The union chief steward also tried to call Ms. James. None of these people was able to speak to Ms. James and none of them received a return phone call from Ms. James. Mr. Molander testified at his deposition that "had she called us on the phone once and explained the situation, we could have worked something out."

DynCorp heard from CNA that Ms. James was working at BJ Computers during this time she was absent from DynCorp. (Deposition of Mr. Molander) There was concern by Mr. Molander that she wasn't truly disabled. (Deposition of Mr. Molander) DynCorp had a policy of relying on the disability benefits insurance company, CNA, to determine if an employee who had filed a short term disability claim and was away from his job, was in fact disabled and unable to work at his or her job. Mr. Molander explained in his deposition that he and his office were not qualified to determine if an employee was medically qualified to be on short term disability leave but left that determination up to the insurance company. DynCorp encouraged its employees to use the short term disability benefits and didn't mind its employees being on leave for short term disabilities as long as the employees weren't taking advantage of DynCorp. They had situations in the past where employees had taken advantage of short term disability leaves. (Deposition of Mr. Molander)

When the human resources department at DynCorp learned that Ms. James was not qualified for short term disability, they determined that she was absent without leave, in other words AWOL. Mr. Molander wanted to communicate with Ms. James regarding her absence from work. He wanted to hear from her to learn why she was not coming into work but only received a letter about her dispute with the insurance company. As he stated in his deposition, "We had no clue as to why she was not communicating with us. All that we knew was that she had, she was not coming to work and she did not have an approved short-term disability."

After approximately two weeks, Mr. Molander sent a letter dated February 24, 1997 by certified mail to Ms. James in which he terminated her employment with DynCorp. The letter stated that she was terminated because she was on an unapproved leave of absence.

## PRIMA FACIE CASE OF RETALIATORY DISCHARGE

To recover under a §510 ERISA claim the Plaintiff has the burden of showing that the employer had the specific intent to violate ERISA, that is to engage in prohibited behavior that prevents the Plaintiff from obtaining or becoming entitled to obtain benefits under an employee benefit plan. *Herring v. Oak Park*, 963 F. Supp. 1558 (D. Kansas 1997). The specific intent, or illegitimate motive on the part of the employer, must be one of the factors which led to the employer's decision to terminate the employee. It need not be the only factor. *Gavalik vs. Continental Can Co.*, 812 F.2d 834 (3rd Cir.1987), *cert. denied*, 484 U.S. 979 (1987).

The Plaintiff has the burden of presenting evidence of the employer's intent. *Gavalik*, supra. Since most evidence available to show intent will be circumstantial, the courts have adopted a prima facie burden for the plaintiff, modeled upon the burden shifting analysis of Title VII cases. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish her prima facie case under §510, the Plaintiff must present evidence of 1) prohibited behavior by the employer 2) taken for the purpose of interfering 3) with the attainment of any right which the employee may have become or will become entitled. *Gavalik,* supra at 852. If the Plaintiff establishes her burden, the burden of production shifts to the employer who may introduce evidence of a legitimate business reason for the termination. *Gavalik,* supra at 853.

Plaintiff Ms. James was terminated from her employment at DynCorp on February 24, 1997 after having filed two claims for short term disability and having been denied benefits by CNA on both claims. The circumstantial evidence which Ms. James points to are 1) Mr. Molander's statement to her "you won't be here long", 2) Mr. Molander's animosity toward her as a result of her union grievance, 3) communications between CNA and DynCorp on the status

of Ms. James' disability claims, 4) communications between CNA and DynCorp about the computer business which Ms. James owned, and 5) the fact that the short term disability claims were denied in early February 1997 close in time to her termination of employment on February 24, 1997. I have concluded that this evidence, presented in the context of the short term disability claims, would not lead a reasonable jury to conclude that there was relationship between the decision to terminate Ms. James and an attempt by DynCorp to interfere with present benefits or future benefits to which Ms. James might become entitled.

The animosity of Mr. Molander perceived by the Plaintiff does not have a causal relationship to her termination. Mr. Molander testified, to the contrary, that he wanted to work the employment relationship out. He just needed to know why she wasn't coming into work.

The communications between CNA and DynCorp were legitimate business communications about the status of one of DynCorp's employees and her insurance claim. DynCorp did pass on information it had about BJ Computers to CNA. (Francis Hinkle called CNA to let them know that a DynCorp employee's son had purchased a computer from BJ Computers in Alamogordo and had taken it back to the shop for repairs.) This information was passed onto the CNA investigators. DynCorp knew it had situations in the past where employees had taken advantage of short term disability leaves. DynCorp relied upon CNA to determine if an employee was disabled from working. Passing information on to the insurance company which might lead the insurance company to conclude that someone was not disabled, i.e. working at another business, does not rise to an inference of retaliatory discharge on the part of DynCorp for purpose of interfering with an employee's attainment of benefits. The information may well have been out of date or erroneous. DynCorp did not act upon this information. It passed it on to

CNA so that its investigators could act upon it. I conclude that DynCorp had a legitimate business reason for bringing this kind of information to the attention of its disability insurers.

The fact that the decision to terminate Ms. James was made shortly after DynCorp's discovery that Ms. James was not in fact on short term disability leave does not establish a causal connection between the decision to terminate Ms. James and an attempt by DynCorp to retaliate or attempt to interfere with the attainment of benefits by the Plaintiff. Ms. James had already applied for her benefits. It was determined by an independent third party, CNA, the disability insurance company, that she was not entitled to benefits for this period of her absence from work. The decision to terminate her employment with DynCorp had to do with the fact that she was on an extended leave of absence which did not qualify as a short term disability, not an attempt to dissuade her from applying for benefits or an attempt to interfere with her collection of benefits.

Even if Plaintiff had been able to establish a prima facie case of retaliatory discharge pursuant to *Gavalik,* supra, DynCorp has established by Mr. Molander's deposition and the letters dated February 6 and 24, 1997, that it had a legitimate business decision for the termination of Ms. James. The decision to terminate Ms. James came only after DynCorp learned from CNA that the Plaintiff did not qualify for short term disability for the extended leave of absence she had taken from November through February. Once DynCorp learned that Ms. James was not on a short term disability leave, DynCorp reasoned that Ms. James needed to communicate with them why she was still absent from work. Ms. James did nothing beyond write a short letter to Mr. Molander. DynCorp's response was to terminate her for being absent without authorization or approval. Mr. Molander explained that the usual policy of DynCorp was to terminate employees who were absent three days without communication to their supervisors. Ms. James was absent

much longer than that without communication to either her supervisor or the human resources department with reasons for her absence.  Thus, I conclude that DynCorp has presented a legitimate business reason for its termination of the Plaintiff.  *Herring v. Oak Park Bank,* supra.

Plaintiff has failed to establish her prima facie case of retaliatory discharge.  The circumstantial evidence presented would not allow a reasonable trier of fact to conclude that there was an intent on the part of DynCorp to discharge Ms. James in retaliation for exercising her rights under her employee benefit plan.  Even if a reasonable trier of fact could so conclude the necessary intent on the part of DynCorp, the employer has presented a legitimate business reason for terminating Plaintiff.  Plaintiff has not been able to overcome this legitimate reason for her termination on February 24, 1997.

CONCLUSION

For the reasons stated above and discussed in this memorandum opinion, I find that the all pending Motions for Summary Judgment are granted in favor of the Defendants and all Summary Judgment Motions requested by the Plaintiff are denied.

_____

SENIOR UNITED STATES JUDGE